1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Scott M. McNair,                    )    No. CV-03-2119-PHX-NVW
                                         )
10                  Plaintiff,           )    **ORDER**
                                         )
11   vs.                                 )
                                         )
12                                       )
     County of Maricopa, et al.,         )
13                                       )
                    Defendants.          )
14                                       )
     _____)

15

16        The Court has before it Defendants' Motion for Summary Judgment, Doc. #40,

17   Defendants' Statement of Facts in Support of Their Motion for Summary Judgment, Doc.

18   #41, Plaintiff's Response to Defendants' Motion, Doc. #27, Defendants' Reply in Support of

19   Their Motion, Plaintiff's Motion for Summary Judgment, Doc. # 46, Defendants' Response

20   to Plaintiff's Motion, Doc. # 48, Plaintiff's Reply to Defendants' Response, Doc. #71, and

21   Plaintiff's Complaint, Doc. # 71.

22        In this action for employment discrimination, Defendants move for summary

23   judgment on the ground that pro se plaintiff Steve McNair ("McNair") cannot make a prima

24   facie showing of sexual harassment or retaliation under Title VII.  McNair also moves for

25   partial summary judgment on his retaliation claim.  McNair's motion for partial summary

26   judgment demonstrates his understanding that he needed to present a triable issue of fact to

27   withstand summary judgment.

28

1    **I.      Statement of Facts**

2           McNair worked as a Database Administrator for Maricopa County Department of

3    Transportation ("MCDOT") from October 2000 until June 30, 2002.  During this two-year

4    period, McNair had two year-to-year contracts, the first from October 12, 2000 to June 30,

5    2001 and the second from July 1, 2001 to June 29, 2002. Defendants' Statement of Facts

6    ("DSOF") at ¶2.  At some point between November 1, 2001 and December 1, 2001, Terry

7    Peterson ("Peterson") informed McNair of the County's decision not to renew his contract for

8    the following year.  Doc. #41, Terry Peterson Aff. ("Peterson Aff.) at ¶1.  MCDOT was

9    replacing McNair's year-to-year contract with a permanent database administrator ("DBA")

10   position, which would pay $62, 212.80, approximately $52,000 less than McNair's annual

11   $114,000 fee.  DSOF at ¶6.  McNair's contract expired on June 29, 2002.

12          While working at MCDOT, McNair developed a friendship with Jennifer Ramsey

13   ("Ramsey"), a co-worker.  They went to lunch frequently and socialized outside of work.  On

14   several occasions McNair invited Ramsey to join him in an evening activity, and other times

15   Ramsey approached McNair about meeting up outside of work.  At times they discussed

16   sexual topics.   On December 31, 2001, McNair contacted Peterson to inform him that

17   Ramsey's boyfriend, Jason, had threatened him at work.  Peterson Aff. at ¶ 5.  Peterson told

18   McNair to "take a couple of days off" so that Peterson could investigate whether McNair was

19   indeed threatened.  *Id.*  McNair was paid for these days.  *Id.*  Peterson's investigation did not

20   uncover any evidence suggesting that Ramsey had any male visitors that day who threatened

21   McNair.  *Id.* at ¶¶7,8.  In his brief, McNair alleged that on December 31, 2002 he also

22   informed Peterson about Ramsey's sexual harassment.

23          In May 2002, McNair first expressed interest in the DBA position.  He contacted both

24   Peterson and Kenneth Medlin ("Medlin") about his interest, and both informed him that the

25   application collection period was over and he could no longer apply for the position.  On July

26   17, 2002, McNair e-mailed a complaint alleging various claims, including violations of Title

27   VII for sexual harassment and retaliation, to several employees at Maricopa County.  On

28

1   September 6, 2002, McNair submitted a formal, written complaint to human resources.

2   **II.   Legal Standard**

3   To withstand a motion for summary judgment, the opposing party must set forth

4   specific facts showing that there is a genuine issue of material fact in dispute.  Fed. R. Civ.

5   P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A dispute about a

6   material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

7   for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In the

8   absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex*

9   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(citations omitted).

10   The party seeking summary judgment bears the initial burden of informing the court

11   of the basis for its motion, and identifying those portions of the pleadings, depositions,

12   answers to interrogatories, and admissions on file, together with the affidavits, if any, which

13   it believes demonstrate the absence of any genuine issue of material fact.  *Id.* at 323 (1986).

14   Summary judgment is appropriate against a party who "fails to make a showing sufficient to

15   establish the existence of an element essential to that party's case, and on which that party will

16   bear the burden of proof at trial." *Id.* at 322.  Although the initial burden is on the movant to

17   show the absence of a genuine issue of material fact, this burden may be discharged by

18   indicating to the court that there is an absence of evidence to support the nonmoving party's

19   claims.  *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).

20   When parties file cross motions for summary judgment, a court must determine whether

21   summary judgment for either party is appropriate.  *Fair Housing Council of Riverside County,*

22   *Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

23   In a Title VII employment-discrimination case such as this one, courts apply the

24   "shifting burdens" analytical framework at the summary-judgment stage.  *McDonnell Douglas*

25   *Corp. v. Green*, 411 U.S. 792, 800-04 (1973).  The employee must first establish a prima facie

26   case of discrimination.  *Id.* at 802.  The burden then shifts to the employer to articulate a

27   legitimate non-discriminatory reason for its employment decision.  *Id.*  If the employer makes

28   such a showing, the plaintiff must demonstrate that the articulated reason is pretextual "either

1  directly by persuading the court that a discriminatory reason more likely motivated the

2  employer or indirectly by showing that the employer's proffered explanation is unworthy of

3  credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

4      Because McNair did not submit a statement of facts or an affidavit with his motions,

5  the record consists of facts presented by Defendants and several exhibits submitted by McNair

6  to counter Defendants' summary-judgment motion and to support his own motion for partial

7  summary judgment.  The resulting void is significant because a party opposing summary

8  judgment cannot merely rely on his pleadings.  *See Anderson*, 477 U.S. at 259 (1986)("[A]

9  plaintiff may not, in defending against a motion for summary judgment, rest on mere

10  allegations or denials of his pleadings.").

11  **III.    Analysis**

12       **A.    Proper Defendants**

13      McNair alleges that Medlin, Peterson, and Ramsey violated Title VII.  These

14  individuals are McNair's co-workers and supervisors.  The Ninth Circuit has "consistently

15  held that Title VII does not provide a cause of action against supervisors or fellow

16  employees*." Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003).  Therefore,

17  Medlin, Peterson, and Ramsey are entitled to summary judgment.

18       **B.    Sexual Harassment**

19      McNair asserts that Ramsey, his female co-worker, created a hostile work environment

20  because of her frequent sexually-oriented discussions.  In order for McNair to survive

21  Defendants' summary-judgment motion, he must show that he was subjected to verbal or

22  physical conduct of a sexual nature, that the conduct was unwelcome, and that the conduct

23  was sufficiently severe or pervasive to alter the employment conditions and create an abusive

24  work environment.  *Porter v. California Dept. of Corrections*, 419 F.3d 885, 892 (2005).  A

25  plaintiff must also show that the work environment was both subjectively and objectively

26  hostile, meaning that both the plaintiff and a reasonable person would find the environment

27  hostile.  *Dominguez-Curry v. Nevada Transp. Dept.* 424 F.3d 1027, 1034 (9th Cir. 205).

28

1        Because McNair cannot demonstrate that any of Ramsey's conduct was unwelcome,

2  the court analyzes that element first.  In McNair's sexual harassment complaint that he filed

3  with Maricopa County on September 6, 2002, DSOF, Exhibit 9, McNair never stated or even

4  suggested that Ramsey's sexual discussions were unwelcome.  In fact, his complaint

5  demonstrates just the opposite.  McNair sought Ramsey's company at work where the two

6  went to lunch together frequently, and he invited her to outside-work events.  *See Id.* at 5, 8,

7  11 (inviting her to a nightclub, offering to help her move, inviting her to the theater).  Up until

8  the end of their friendship, McNair continued to call Ramsey on the telephone.  *See, e.g., Id.*

9  at 17 (McNair contacting Ramsey to wish her a merry Christmas in 2001).  McNair does not

10  introduce any evidence with his briefs, nor does his complaint that he filed with Human

11  Resources, suggest that Ramsey's company and discussions, even if sexual in nature, were

12  unwelcome.

13        Therefore, McNair cannot survive Defendants' motion for summary judgment because

14  he cannot demonstrate that there is a genuine issue of material fact in dispute.  McNair has

15  not introduced any evidence that Ramsey's conduct was unwelcome.

16      **C.**    **Retaliation Claim**

17        In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that

18  (1) he engaged in protected activity; (2) he was thereafter subjected by his employer to an

19  adverse employment action; and (3) a causal link existed between the protected activity and

20  the adverse employment action.  *Porter*, 419 at 894.  Once the plaintiff has established a

21  prima facie case of retaliation, the burden of production shifts to the employer to articulate

22  some legitimate, nondiscriminatory reason for the adverse employment decision.  *Ray v.*

23  *Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

24      **1.**    **Protected Activity**

25        An employee engages in protected activity when he files a formal or informal

26  complaint with an employer in which he alleges that the employer violated Title VII.  *See Id.*

27  ("Making an informal complaint to a supervisor is also a protected activity."); *see also*

28  *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir.

1   200)("Title VII allows employees to freely report actions that they reasonably believe are

2   discriminatory, even if those actions are in fact lawful.").

3          McNair asserts that he engaged in protected activity when he informed Peterson on

4   December 31, 2001[1] that Ramsey's boyfriend, Jason, threatened him at work and that Ramsey

5   was sexually harassing him at work.  Peterson avers that McNair only discussed Jason's

6   alleged threat and that McNair did not mention sexual harassment at that time.  Peterson Aff.

7   at 6.   Even McNair's September 6, 2002 complaint fails to demonstrate that McNair

8   mentioned sexual harassment to Peterson on that date.  Doc. #41 at 20 ("To emphasize the

9   point, I repeated to Mr. Peterson how Ms. Ramsey had continually told me of his physical and

10  sexual violence with her, how she had previously warned me about him, and that I was

11  concerned of being ambushed in the parking lot by some *wife-beating redneck*.").  McNair

12  only vaguely references the sexual dynamic between himself and Ramsey: "I began explaining

13  her constant sexual tease games and how I had tried to put an end to our association numerous

14  times but that she would not let that happen."  *Id.*   But as discussed above, McNair's

15  conversation with Peterson was about McNair's fear that Jason would assault him.  McNair's

16  allusive statement does not demonstrate that he informed Peterson on December 31, 2001 that

17  Ramsey was sexually harassing him.

18         McNair has not introduced any other evidence supporting his position that he informed

19  Peterson on December 31, 20001 that Ramsey was sexually harassing him.    Therefore,

20  whether McNair mentioned sexual harassment on December 31, 2001 is not a disputed

21  material fact because McNair has not introduced any evidence suggesting that the

22  conversation with Peterson was anything other than a discussion about Jason's threat at the

23  workplace.

24

25

26  [1]The fact that McNair e-mailed a complaint to Human Resources and filed a written
    complaint after his contract expired does not help his retaliation claim because he engaged
27  in that protected activity after the alleged adverse employment decision, and therefore it is
    impossible for MCDOT to have retaliated against McNair in response to either of those two
28  actions.

1      Complaining about Jason's threat is not protected activity under Title VII because

2  McNair is not alleging that MCDOT was violating Title VII. *See Passantino*, 212 F.3d at

3  506. If McNair had informed Peterson that Ramsey was sexually harassing him, McNair's

4  conduct would qualify as protected activity because Title VII prohibits sexual harassment by

5  an employer. However, because McNair has not introduced any evidence, only unfounded

6  assertions in his motions, that he informed Peterson that Ramsey was sexually harassing him,

7  McNair cannot satisfy the first element of retaliation—that he was engaging in protected

8  activity at the time he spoke with Peterson on December 31, 2001.

9                          **2.      Adverse Employment Decision**

10      Even if McNair did inform Peterson that Ramsey was sexually harassing him on

11  December 31, 2001, McNair cannot demonstrate that he was thereafter subjected to an

12  adverse employment action. McNair argues that MCDOT did not renew his contract or, in

13  the alternative, that MCDOT did not offer him the DBA position because of his December 31,

14  2001 conversation with Peterson. Even assuming that not renewing a year-to-year contract

15  or not selecting a contract employee for a permanent position can constitute an adverse

16  employment action under Title VII, which the court does not address, McNair does not offer

17  evidence that either happened. Rather, the contract position was terminated in favor of an

18  employee position, and McNair did not apply for the employee position.

19                          **a.      Contract Renewal**

20      Between November 1, 2001 and December 1, 2001, Peterson informed McNair that

21  his contract position was not going to be renewed in 2002. *Id.* Peterson explained that

22  MCDOT needed to cut its budget and that a non-contract employee could perform McNair's

23  job for half of McNair's current salary. *Id.* If the county decided not to renew McNair's

24  position before McNair spoke with Peterson about the alleged threat, then it is impossible for

25  MCDOT's decision not to renew his contract to be based on McNair's December 31, 2001

26  discussion with Peterson.

27

28

1

**b.      DBA Position**

2          During Peterson's discussion with McNair about MCDOT's decision not to renew

3    McNair's year-to-year contract, Peterson encouraged McNair to apply for the permanent DBA

4    position. *Id.*  McNair responded to Peterson's suggestion by quickly brushing it aside. *Id.* ("I

5    informed McNair that he could apply for the DBA position.  McNair laughed and told me that

6    he was thinking of going on vacation to the Cayman Islands or going into business.").  Only

7    after a market salary analysis did McNair realize that he could not continue to receive his high

8    hourly wage elsewhere. *Id.*

9          The evidence demonstrates that by the time McNair decided that he wanted to apply

10   for the DBA position, the recruiting period had ended.  On May 20, 2002, approximately eight

11   months after his first discussion with Peterson about the DBA position, McNair expressed

12   interest in the position by e-mailing five MCDOT employees to inform them that he was

13   excusing himself from reviewing the DBA job applications because he had decided to apply

14   for the position.  Doc. #56, Exhibit 7.  At around the same time, McNair approached Peterson

15   and asked to be hired as the DBA, but was told that the application collection process was

16   completed and interviewing had begun.  Doc. #41, Attachment A.  Similarly, when McNair

17   approached Medlin, he also informed McNair that recruiting was closed and it was too late

18   for him to apply for the DBA position.  Doc. #41, Exhibit 4 at 254.

19         McNair does not introduce any evidence to suggest that MCDOT employees

20   discouraged or prevented him from applying for the DBA position because of his December

21   31, 2001 discussion with Peterson.  In fact, the evidence suggests just the opposite.  McNair

22   had been a good employee, Doc. #56, Exhibit 9 (a picture of the plaque McNair received for

23   all of his hard work in 2002), and Peterson encouraged McNair to apply for the DBA position.

24    Peterson said he would have hired McNair for the DBA position had he properly applied for

25   it.  Doc. #41 at 252.  McNair cannot demonstrate that he ever applied for any non-contract

26   positions with Maricopa County.  Doc. #41, Attachment C, Joy Cox Affidavit.

27         Therefore, even if McNair mentioned that Ramsey was sexually harassing McNair

28   during their December 31, 2001 discussion, McNair has not demonstrated that he suffered

1   from an adverse employment decision because of that discussion.  McNair cannot establish

2   the prima facie case for retaliation under Title VII, and he has failed to demonstrate any

3   genuine issue of material fact in dispute.

4          IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment, Doc.

5   #41, is granted.

6          IT IS FURTHER ORDERED that Plaintiff's Partial Motion for Summary Judgment,

7   Doc. #46, is denied.

8          IT IS FURTHER ORDERED that the clerk enter judgment in favor of all Defendants

9   and that Plaintiff McNair take nothing on his complaint, and the Clerk is directed to terminate

10  this action.

11         IT IS FURTHER ORDERED that Plaintiff's Motion to Deny Consideration of

12  Defendants' Summary Judgment Reply, Doc. # 73, is denied on it merits; Plaintiff's Motion

13  to Compel Withdrawal of Counsel Eileen Dennis Gilbride, Doc. #74, is denied on its merits

14  and as frivolous, on its face; and Defendants' Motion to Preclude Plaintiff's Discovery

15  Attempts, Doc. #80, is denied as moot.

16         DATED this 16th day of November, 2005.

17

18

19  _____
                Neil V. Wake
20        United States District Judge

21

22

23

24

25

26

27

28